UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RANDALL SCOTTEN and JENNIFER SCOTTEN,<br><br>    Plaintiffs,<br><br>    v.<br><br>FIRST HORIZON HOME LOAN CORPORATION, a division of First Tennessee National Bank, N.A., a corporation, NATIONSTAR MORTGAGE, LLC, a business entity, BANK OF NEW YORK, a federally chartered bank, and DOES 1 through 100, inclusive,<br><br>    Defendants.<br>_____/ | NO. CIV. 2:12-1266 WBS DAD<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION TO DISMISS</u> |

----oo0oo----

Plaintiffs Randall Scotten and Jennifer Scotten brought an action in state court against defendants First Horizon Home Loan Corporation ("First Horizon"), Nationstar Mortgage, LLC ("Nationstar"), and the Bank of New York in state court, asserting claims arising from defendants' allegedly wrongful

1

conduct related to a residential loan.  Defendants then removed the proceeding to this court on the basis of diversity jurisdiction.  (Docket No. 1.)  Currently before the court is defendants' motion to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket No. 8.)

I.   Factual and Procedural Background

In June 2005, plaintiffs entered into a thirty-year mortgage with First Horizon.  (Notice of Removal Ex. 1 ("Compl.") ¶ 7 (Docket No. 1); Defs.' Req. for Judicial Notice ("RJN") Ex. 1 (Docket No. 9).)  The loan agreement between the parties was secured by property located at 16033 Covered Bridge Way in Lathrop, California (the "Covered Bridge property").  (Compl. ¶ 7, RJN Ex. 1.)  Plaintiffs allege that First Horizon is also the foreclosure trustee, that Nationstar is the loan's current servicer, and that the Bank of New York is "the entity with rights to receive the income stream arising from" the promissory note associated with the Covered Bridge property.  (Id. ¶¶ 8-10; see also RJN Exs. 2-3.)

In January 2010, plaintiffs filed for Chapter 7 bankruptcy.  (Id. ¶ 25.)  According to plaintiffs, this bankruptcy was terminated with a discharge in 2010, and plaintiffs allege that they thereafter reaffirmed their mortgage by continuing to make payments under the Note.  (Id.)  They further allege that MetLife, the servicer at the time, accepted payments for First Horizon after the discharge.  (Id.)

In August 2011, plaintiffs allege that they learned

2

that Nationstar was the new servicer on their loan.  (Id. ¶ 26; RJN Ex. 3.)  According to the Complaint, by the following month plaintiffs were unable to afford their mortgage payments and so they contacted Nationstar to "explore options to reduce their monthly payments."  (Id. ¶ 27.)  They allegedly spoke with someone at Nationstar named James, who said that he would fax plaintiffs an application for a loan modification that they should fill out and return.  (Id.)  After some delay in receiving a blank application, plaintiffs allege they received an application by email that they completed and returned to Nationstar.  (Id. ¶¶ 28-29.)  They further allege that nine days after they returned their application, they spoke with Michael at Nationstar who informed them that Nationstar had received their application and would make a "decision on the application by the following week."  (Id. ¶ 30.)

On October 20, 2011, plaintiffs allege that Nationstar employee Tiffany Taylor left a message on their home phone asking that they call her back.  (Id. ¶ 31.)  According to plaintiffs, they made several phone calls over the next month and a half before they were able to speak with Taylor.  (Id. ¶¶ 32-34.)  When they spoke, Taylor allegedly told them that Nationstar had not received their application.  (Id. ¶ 34.)  Plaintiffs allege that they faxed the information again that same day.  (Id.)

After sending the fax, plaintiffs allege that they called Nationstar three times between December 2011 and February 2012 to check on the status of their application, but each time had to leave a voicemail message.  (Id. ¶ 35.)  According to plaintiffs, when they spoke with Taylor on February 7, 2012, she

3

informed them that the Bank of New York would "not modify their mortgage until the debt is affirmed post bankruptcy." (Id. ¶ 36.) The following day, Michael allegedly informed plaintiffs that the only way that the debt could be affirmed was by order of the bankruptcy court judge. (Id. ¶ 37.) Plaintiffs allege that Michael did not have any specialized legal training or knowledge. (Id.)

Plaintiffs bring claims for breach of fiduciary duty, fraudulent concealment, quiet title, and negligence. (Docket No. 1, Ex. 1.) The first three claims are brought against all defendants; the claim for negligence is brought against only Nationstar and the Bank of New York. (Id.) Defendants now move to dismiss all four claims for failure to state a claim pursuant to Rule 12(b)(6). (Docket No. 8.) Plaintiffs only oppose the motion as to their claims for negligence and breach of fiduciary duty, and simply request leave to amend their claims for quiet title and fraudulent concealment. (Pls.' Opp'n to Defs.' Mot. to Dismiss at 9:18-21 (Docket No. 11).)

II. Request for Judicial Notice

In general, a court may not consider items outside the pleadings when deciding a motion to dismiss, but it may consider items of which it can take judicial notice. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice

4

may properly be taken of matters of public record outside the pleadings. See <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).

Defendants request that the court judicially notice several recorded documents pertaining to the Covered Bridge property. (<u>See</u> Defs.' Request for Judicial Notice Exs. 1-4.) The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned. See <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

III. <u>Discussion</u>

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> <u>Davis v. Scherer</u>, 468 U.S. 183 (1984); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).

A. <u>Breach of Fiduciary Duty</u>

The elements of a breach of fiduciary duty claim are (1) existence of a fiduciary relationship; (2) breach of a fiduciary duty; and (3) damage proximately caused by that breach. Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (3d Dist. 2003). Under California law, it is well-established that the ordinary lender-borrower relationship does not impose any fiduciary duty on the lender.  See Bridgeman v. United States, Civ. No. 10-01457, 2011 U.S. Dist. LEXIS 6059, at *52 (E.D. Cal. Jan. 21, 2011); Oaks Mgmt. Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (4th Dist. 2006); Nymark v. Heart Fed. Savs. & Loan Ass'n, 231 Cal. App. 3d 1089, 1093 n. 1 (3d Dist. 1991).  However, a bank may "undertake obligations which bring it into a 'special relationship' with a customer," including when a bank affirmatively offers "trust and other specifically fiduciary services."  Copesky v. Superior Court, 229 Cal. App. 3d 678, 691 n.12 (4th Dist. 1991).  A fiduciary duty may also arise when "confidence is reposed by persons in the integrity of others, and . . . the latter voluntarily accepts or assumes to accept the confidence."  Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101–02 (2d Dist. 1991) (superceded by statute on other grounds).

Here, plaintiffs allege that Nationstar owed them a fiduciary duty because it processed plaintiffs' loan modification application and made representations regarding the effect of plaintiffs' bankruptcy on their mortgage.  They offer no allegations, however, that Nationstar or any defendant represented to plaintiffs that it would act in plaintiffs' best interests or offered plaintiffs any specific fiduciary services. All of the cases that plaintiffs cite in support of the

proposition that a fiduciary duty existed are cases in which the court found that a bank owed borrowers a general duty of care sufficient to support a negligence claim, not a fiduciary duty. See Osei v. Countrywide Loans, 692 F. Supp. 2d 1240 (E.D. Cal. 2010) (no discussion of fiduciary duty); Garcia v. Ocwen Loan Servicing, LLC, Civ. No. 10-0290, 2010 WL 1881098 (N.D. Cal. May 10, 2010) (same); Watkinson v. MortgageIT, Inc., Civ. No. 10-327, 2010 WL 2196083 (S.D. Cal. June 1, 2010) (same); Nymark, 231 Cal. App. 3d at 1093 (holding that "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature").

Nothing about the parties' alleged interactions suggests that any defendant agreed to favor plaintiffs' interests at the expense of its own. Accordingly, plaintiffs have not sufficiently alleged that a fiduciary duty existed and the court will grant defendants' motion to dismiss plaintiffs' breach of fiduciary duty claim.

B.   Negligence

To state a claim for negligence, a plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist. 2004).

"[A]s a general rule, a financial institution owes no

7

duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark, 231 Cal. App. 3d at 1096. This general rule also applies to loan servicers. See Abels v. Bank of Am., Civ. No. 11-0208, 2011 WL 1362074, at *3 (N.D. Cal. Apr. 11, 2011).

This no-duty rule does not apply "when the lender's activities exceed those of a conventional lender." Osei, 692 F. Supp. 2d at 1249; see Wagner v. Benson, 101 Cal. App. 3d 27, 35 (4th Dist. 1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" (quoting Connor v. Great W. Sav. & Loan Ass'n, 69 Cal. 2d 850, 864 (1968))).

Even when the lender is acting within the scope of a conventional lender, the no-duty rule is only a general rule. Osei, 692 F. Supp. 2d at 1249. To determine whether a duty actually existed on the facts of the case, the Nymark court applied the six-factor test established by the California Supreme Court in Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958). The Biakanja test balances six non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001) (quoting Biakanja, 49 Cal. 2d at 650) (alterations in original) (internal quotation marks omitted). Although Biakanja applied

the test to determine whether a defendant could be held liable to a third person not in privity with the defendant, <u>Nymark</u> held that the test also determined "whether a financial institution owes a duty of care to a borrower-client." <u>Nymark</u>, 231 Cal. App. 3d at 1098.

Here, plaintiffs allege that Nationstar and the Bank of New York were negligent. With respect to Nationstar, plaintiffs allege that it had a duty to exercise reasonable care in servicing their loans and breached that duty by incorrectly informing plaintiffs that the Bank of New York participated in the Home Affordable Modification Program ("HAMP") and "stating a legal conclusion about the process of mortgage affirmation" that the individual making the statement was not qualified to make. (Compl. ¶¶ 61-67.) With respect to the Bank of New York, plaintiffs allege that it owed them a duty of ordinary care in evaluating their loan modification application and breached that duty by automatically rejecting their application on the basis of plaintiffs' failure to affirm their mortgage post-bankruptcy when the debt had been de facto affirmed. (<u>Id.</u> ¶¶ 68-70.)

Plaintiffs' allegations about the loan modification application process are insufficient to plausibly suggest that either defendant owed plaintiffs a duty of care. See <u>Arqueta v. J.P. Morgan Chase</u>, Civ. No. 2:11-441, 2011 WL 2619060, at *5 (E.D. Cal. July 22, 2011) (applying <u>Biakanja</u> factors to hold that no duty of care arose when defendant accepted and processed plaintiff's loan modification application); <u>Dooms v. Fed. Home Loan Mortg. Corp.</u>, Civ. No. 11-0352 LJO DLB, 2011 WL 1232989, at *12 (E.D. Cal. Mar. 31, 2011) (holding that lender owed plaintiff

9

no duty of care related to her loan modification attempts); Becker v. Wells Fargo Bank, N.A., Inc., Civ. No. 2:10-02799 LKK KJN, 2011 WL 1103439, at *23 (E.D. Cal. Mar. 22, 2011) (magistrate judge's findings and recommendations that were adopted in full) (holding that allegations about loan modification application process did not give rise to a duty); DeLeon v. Wells Fargo Bank, N.A., Civ. No. 10-01390, 2010 WL 4285006, at *4 (N.D. Cal. Oct. 22, 2010) (holding that the defendant had no duty "to complete the loan modification process"); Sullivan v. JP Morgan Chase Bank, NA, 725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) ("Plaintiffs' allegations that Defendant misrepresented to them that a permanent loan modification would be put into place are insufficient to form the basis of a negligence claim."). But see Ansanelli v. JP Morgan Chase Bank, N.A., Civ. No. 10-03892, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (finding a duty of care where plaintiffs alleged that defendant "offer[ed] an opportunity to plaintiffs for loan modification and [engaged] with them concerning the trial period plan").

        The cases plaintiffs cite are all distinguishable. In Osei, the court determined that the plaintiff had sufficiently plead a negligence claim against certain defendants alleged to have acted as loan brokers who owed the plaintiff a duty of care that they breached by "direct[ing] plaintiff into a loan that plaintiff was not qualified to receive based on his income and would not have qualified for by industry standards." Osei, 692 F. Supp. 2d at 1251. The court also found that another defendant was alleged to have breached a duty of care when it failed to

10

provide the plaintiff with legally required disclosures at the time the loan was entered into. Id. at 1051. In Watkinson, the court held that the defendant "arguably owed Plaintiff a duty of care in processing Plaintiff's loan application" where defendant allegedly knowingly overstated both plaintiff's income and the value of the subject property. Watkinson, 2010 WL 2196083, at *8.

In determining whether a duty of care existed after Nymark, the court must "consider the particular conduct underlying the negligence claim." Osei, 692 F. Supp. 2d at 1250. Plaintiffs' allegations here have nothing to do with the institution of the loan, either the approval process or disclosures.

Garcia did involve a loan modification application, but the conduct at issue was different. The foreseeability of harm, the degree of certainty that the plaintiff suffered injury, and the closeness of the connection between the defendant's conduct and the injury suffered (three of the Biakanja factors) were all clearer in Garcia because the defendant sold plaintiff's house at a trustee's sale after misdirecting paperwork and failing to inform the plaintiff of the impending sale. The court relied upon the fact that as a result of the defendant's conduct, the plaintiff had permanently lost the possibility of modification and lost his house. Here, plaintiffs' home has not been sold at a foreclosure sale nor do plaintiffs allege that they have lost the possibility of obtaining a loan modification.

Moreover, plaintiffs admit that they fell behind on their mortgage payments and make no allegations that they were

11

entitled to a modification or should have been offered a modification.  The potential loss of their home is caused by their delinquency, which they do not allege was caused by defendants' actions.[1]  (See also RJN Ex. 4 (Notice of Default dated March 14, 2012, listing the current default as $28,073.14).)  It is unclear, therefore, how defendants' alleged breaches caused plaintiffs any damages.

Plaintiffs do include a laundry list of damages including losses through overcharges and unlawfully unfavorable loan terms, attorneys' fees, loss of reputation, emotional distress, loss of appetite, frustration, anger, and depression that were allegedly the result of defendants' negligence. (Compl. ¶ 71.)  They offer no more than the conclusory allegation, however, that the alleged negligence was "a direct and proximate cause" of these damages.  (Id.)  These kinds of conclusory allegations and formulaic recitations of elements are insufficient to satisfy federal pleading standards.  Iqbal, 556

---

[1] Plaintiffs do allege in one part of their Complaint that Nationstar represented to plaintiffs that they needed to be in default before they could qualify for a HAMP modification and that they stopped making payments on their mortgage in order to qualify for HAMP.  (Compl. ¶¶ 63-64.)  This allegation is contradicted, however, by plaintiffs' earlier allegations that they began having experiencing financial difficulties and were "unable to keep current" on their mortgage statements and that by September 2011 they could no longer afford their mortgage payments.  (Id. ¶¶ 23-24, 27.)  Such conflicting allegations of facts that would be within plaintiffs' knowledge do not plausibly suggest entitlement to relief.  See In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.") (citing cases).

1  U.S. at 678.  Accordingly, the court will grant defendants'
2  motion to dismiss plaintiffs' negligence claim.
3          IT IS THEREFORE ORDERED that defendants' motion to
4  dismiss be, and the same hereby is, GRANTED.
5          Plaintiffs have twenty days from the date of this Order
6  to file an amended complaint, if they can do so consistent with
7  this Order.
8  DATED:    August 9, 2012

                            _____
                            WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE

13